1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KARENE BEECHAM, Individually          No. Civ. S-07-1115 JAM EFB
     and KARENE CRANKSON,
12   Individually,                         Order Denying In Part and
                                               Granting In Part
13              Plaintiffs,                Plaintiffs'Motions for Summary
                                                    Judgment
14          v.

15   CITY OF SACRAMENTO; a public
     entity, POLICE OFFICER TIMOTHYY
16   TWARDOSZ, POLICE OFFICER
     GEOFFRY ALBERT, POLICE OFFICER
17   STEVE GODDEN, POLICE OFFICER ED
     HENSLEY, and DOES 4 through 10,
18   Jointly and Severally,

19
20              Defendants.

21

22       This matter comes before the Court on Plaintiffs Karene

23   Beecham ("Beecham") and Karena Crankson's ("Crankson")

24   (collectively "Plaintiffs") motion for partial summary judgment

25   pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

26   Defendants City of West Sacramento ("City") and West Sacramento

27   Police Officer Timothy Twardosz ("Officer Twardosz")

28   (collectively "Defendants") oppose the motion.  For the reasons

                                     1

set forth below,[1] Plaintiffs' motion is DENIED in part, and GRANTED in part.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2006, Beecham was driving her sister, Crankson, and their two children in West Sacramento.  Plaintiffs' Statement of Undisputed Facts ("Pls' SUF") ¶ 1.  Officer Twardosz was on duty as a member of the West Sacramento Police Department when he observed Beecham change lanes without signaling.  Defendants' Statement of Undisputed Facts ("Defs' SUF") ¶¶ 1-2.  Officer Twardosz advised dispatch that he intended to make a vehicle stop.  Defs' SUF ¶ 3.  He activated his overhead red light and attempted to stop Beecham's vehicle. Id. ¶ 4.  Beecham did not respond to Officer Twardosz's solid red light.  Id. ¶ 7.

At some point thereafter, Officer Twardosz activated all of his emergency lights and gave periodic bursts of his siren.  Id. ¶ 8.  Plaintiffs' vehicle continued to travel a few blocks at 15 m.p.h. onto the I Street Bridge where it came to a complete stop.  Id. ¶ 11.  Once on the bridge, Officer Twardosz radioed his department that Beecham's car was refusing to yield.  Pls' SUF ¶ 10.  Beecham partially stepped out of the vehicle, and

---

[1]   Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

Officer Twardosz contends she acted bizarrely, appeared extremely angry, and yelled at him. Defs' SUF ¶ 14. Officer Twardosz, using his vehicle public address system, directed Beecham to proceed to the next intersection. Id. ¶ 19. Beecham returned to her vehicle and continued driving over the bridge and past the first intersection, where she asserts there was no place to pull over. Pls' SUF ¶ 18. Beecham pulled over one block later at J and Third Streets in Sacramento. Id.

In response to Officer Twardosz's radio transmission, three other West Sacramento police cars driven by Officer Geoffry Albert, Officer Steve Godden, and Officer Ed Hensley arrived at the scene shortly after Officer Twardosz to conduct a high risk stop. Id. ¶ 19, 21. West Sacramento Police Officers are trained to utilize a high risk stop under circumstances where the leading officer believes the safety risk is elevated, including if a vehicle fails to yield to an officer's lights or sirens. Defs' SUF ¶ 24. Officer Twardosz determined a high risk stop of Beecham and Crankson was necessary. Id. ¶ 26.

During the thirty minute traffic stop, Plaintiffs were forced from their vehicle at gunpoint, ordered to lift their shirts, handcuffed, and detained in the back of a police vehicle while the officers conducted an investigation. Id. ¶¶ 37-70. Defendants contend Beecham yelled at the officers and appeared angry. Id. ¶ 42. It is undisputed that Crankson complied with

the officers' orders throughout the duration of the stop.  Defs'

SUF ¶ 38.  Plaintiffs' original complaint, filed June 11, 2007,

asserts causes of action for wrongful strip-search at gunpoint,

wrongful seizure at gunpoint, violation of constitutional

rights, racial profiling, emotional distress, and sexual

battery.  Pls'Compl.¶ 35.

In the instant motion, Plaintiffs' seek partial summary

judgment. Specifically, Plaintiffs request, as a matter of law,

a finding of liability against Officer Twardosz and the City for

use of excessive force and false arrest under the Fourth

Amendment of the United States and for use of excessive force

and false arrest under Cal. Civil Code § 52.1.  Pls' Motion for

Partial Summary Judgment, filed Aug. 20, 2008, ("Pls' Mot.")

27:19-28, 28:1-5.  In opposition, Defendants argue Officer

Twardosz used reasonable force under the circumstances, is

entitled to qualified immunity, and that several issues of

material fact exist rendering an order of partial summary

judgment against Officer Twardosz and the City inappropriate.

Defs' Opposition to Pls' Mot., filed Sept. 5, 2008, ("Defs'

Opp.") 30:15-23.

II.   OPINION

A. <u>Legal Standard</u>

Summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together

4

with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims and defenses." Cleotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e) and citing Celotex, 477 U.S. at 323).  The Court must view the facts and draw inferences in the manner most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "There must be evidence on which the jury could reasonably find for [the non-moving party]." Anderson, 477 U.S. at 252.  This Court thus applies to either a defendant's or plaintiff's motion for

summary judgment the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id.

B. Fourth Amendment

Plaintiffs bring claims against Officer Twardosz and the City of West Sacramento pursuant to 42 U.S.C. § 1983 for violations of their Fourth Amendment rights to be free from excessive force and false arrest.  Plaintiffs move for partial summary judgment on the ground that their claims succeed as a matter of law.

1. Excessive Force Claim Against Officer Twardosz

Plaintiffs claim Officer Twardosz violated their Fourth Amendment rights by using excessive force.  The Fourth Amendment prohibition against unreasonable searches and seizures permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989).  Whether the force used to effect an arrest is reasonable "is ordinarily a question of fact for the jury."  Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997). (citing, e.g., Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994)); see also Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Although excessive force cases can be decided as a matter of law, they

rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific.  <u>See</u> <u>Chew v. Gates</u>, 27 F.3d 1432, 1443 (9th Cir. 1994).

According to <u>Graham</u>, determining whether the force used in a particular instance is reasonable requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396 (quoting <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985)). Factors to consider include "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to safety of the officers or others, . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the arrest." <u>Chew</u>, 27 F.3d at 1440-41.  In applying the <u>Graham</u> criteria, the analysis begins with the "most important of the three specified factors: whether the suspect poses an immediate threat to the safety of the officers or others." <u>Id.</u> at 1441.

a. Beecham

Here, Plaintiffs assert Beecham's traffic violation coupled with her failure to pull over in response to Officer Twardosz's lights and siren were not enough to amount to an immediate threat.  Pls' Mot. 20:22-28, 21:1-5.  Defendants argue that

under the totality of the circumstances known to Officer
Twardosz at the time of the incident, his display of force was
reasonable.  Defs' Opp. 19:14-28, 20:1-3.  Officer Twardosz
contends the fact that Beecham's vehicle failed to yield to his
lights and siren for several blocks, in addition to travelling
below the speed limit, which in Officer Twardosz's experience
indicates that suspects may be loading weapons or hiding
contraband, demonstrated threatening behavior.  Defs' SUF ¶¶ 1-
10.  Furthermore, Beecham stopped in the middle of a narrow
bridge, a place where suspects stop to load weapons, hide or
dispose contraband, or to flee from police.  <u>Id.</u> at ¶¶ 11-13.
Additionally, Officer Twardosz argues Beecham appeared angry and
screamed incoherently at him in a hostile manner.  <u>Id.</u> at ¶¶ 14-
18, 40-44.  Based on the totality of Beecham's actions, Officer
Twardosz argues it was his objectively reasonable belief that if
he simply approached the vehicle to conduct a traffic stop he
would be placing himself and any nearby citizens in danger of
being seriously injured or killed.  <u>Id.</u> at ¶ 77.

     In the present case, the issue is not whether "the evidence
unmistakably favors one side or the other but whether a fair-
minded jury could return a verdict for the [non-moving party] on
the evidence presented."  <u>Anderson</u>, 477 U.S. at 252.  Given
Beecham's initial noncompliance with Officer Twardosz's lights
and siren in addition to Beecham's slow speed, suspicious

behavior on the bridge, and yelling, a jury could reasonably conclude that Officer Twardosz's show of force was reasonable under the circumstances.  Viewing all evidence in the light most favorable to Officer Twardosz as the nonmoving party, a rational juror could conclude that there is sufficient evidence for a verdict in his favor.  Accordingly, Beecham's motion for partial summary judgment against Officer Twardosz for use of excessive force is DENIED.

b. Crankson

Plaintiffs claim Beecham's behavior and failure to immediately pull over are insufficient to justify Officer Twardosz's (or the other officers who were on scene and acting under Twardosz's direction) use of force against Crankson. Defendants argue Officer Twardosz's use of force was reasonable given his belief that passengers in Beecham's vehicle could have hidden weapons.  Defs' Opp. 19:27-28.  Defendants' arguments, however, do not meet the Graham objective standards of reasonableness.  See Graham, 490 U.S. at 397.  The inquiry in excessive force cases is an objective one, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  Id. Officer Twardosz's subjective belief that passengers may have weapons is irrelevant.

Here, the analysis as to whether Crankson's Fourth Amendment rights were violated begins with the force used against Crankson.  The "factors articulated in <u>Graham</u>, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure."  <u>Chew</u>, 27 F.3d at 1441.  Looking at the facts in the light most favorable to Defendants, Officer Twardosz's use of force was severe.  Officer Twardosz directed a high risk stop to be conducted on Crankson, which included holding Crankson at gunpoint, ordering her to lift her shirt, handcuffing her, and placing her in the back of a police vehicle, thereby leaving her child in the backseat of Beecham's vehicle unattended.  This use of force is particularly severe considering Crankson was merely a passenger in the vehicle.

Next, the Court considers the governmental interest that might justify the use of such force under the <u>Graham</u> factors, starting with an assessment of "the severity of the crime at issue."  <u>Graham</u>, 490 U.S. at 396.  Beecham's failure to yield is by no means such a serious offense as to provide Officer Twardosz with a reasonable basis for using the force he employed against Crankson.  This was not a high speed pursuit or a situation where, from an objectively reasonable point of view, the passenger in the vehicle could be suspected of committing a

crime.   The circumstances are not such in this case as to warrant the conclusion that Crankson was a particular danger. Here, "the nature of the crime at issue provides little, if any, basis for the officers' use of physical force."   See Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005).

Second, this Court must assess "whether the suspect pose[d] an immediate threat to the safety of the officers or others." Graham, 490 U.S. at 396.   Here, even an assessment of the facts in the light most favorable to Defendants show Crankson did not pose an immediate threat.   It is undisputed that Crankson complied with the officers' instructions throughout the duration of the stop.   Officer Twardosz even admits in his deposition testimony that he did not observe Crankson do anything threatening throughout the entire incident.   Twardosz Dep. 74:17-10.   Officer Twardosz had no information that any passenger in Beecham's car was armed, dangerous, or had committed a crime.   Thus, nothing in the record suggests that Crankson posed an immediate threat to Officer Twardosz's safety or to that of anyone else.

Next, the Court considers whether Crankson was "actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.   At no point during the encounter did Crankson attempt to flee, nor could she have done so in light of the fact that she was surrounded by four police cars and held at

gunpoint.  As noted above, Crankson complied with the officers' orders throughout the duration of the stop.  Thus, Crankson was neither actively resisting arrest nor attempting to flee.

Finally, the Court considers whether Officer Twardosz could have used other methods to accomplish a search of Crankson, assuming that he had lawful cause to do so.  Smith, 394 F.3d at 703; Chew, 27 F.3d at 1441 n. 5.  Viewing the facts in the light most favorable to Defendants, it is clear that other, less abusive methods of conducting the search were available.  Even if Officer Twardosz was justified in ordering Crankson out of the car at gunpoint to check for hidden weapons, after he concluded that Crankson was unarmed, any significant threat posed by Crankson was eliminated.  However, Officer Twardsoz proceeded to allow Crankson to be handcuffed and placed in the back of a police vehicle.  Such force was not objectively reasonable under the circumstances.  Officer Twardosz could have ordered one of the four officers to stand with Crankson while the others searched Beecham's vehicle or Crankson could have simply been instructed to wait on the sidewalk while the search was conducted.

In sum, the force used by Officer Twardosz was severe, Crankson had not committed any crime, the crime of which Beecham was suspected was minor, the danger to Officer Twardosz was minimal as was any risk of flight, and there were many less

abusive means through which Officer Twardosz could have accomplished his objective of searching Crankson.  Thus, weighing the severity of the force used against the governmental interests at stake, this Court concludes that the facts here at issue, viewed in the light most favorable to Defendants, demonstrate that Officer Twardosz's actions were unreasonable and that Crankson's Fourth Amendment rights were violated. Accordingly, Crankson's motion for partial summary judgment against Officer Twardosz for use of excessive force is GRANTED.

2. False Arrest Claim Against Officer Twardosz

Plaintiffs allege Officer Twardosz arrested Beecham and Crankson without probable cause in violation of the Fourth Amendment.  It is undisputed that Beecham was arrested.  Defs' Opp. 11:5.  There is a dispute as to whether Crankson was arrested or merely subject to a Terry stop.  Defendants argue first, that Beecham's arrest was supported by probable cause and second, that Crankson was subject to a Terry stop supported by a reasonable suspicion that she was engaged in criminal activity. Defs' Opp. 11:5-11.  This Court will analyze Beecham and Crankson's alleged false arrests separately.

A warrantless arrest must be supported by probable cause. United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990). Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person

13

would have concluded that there was a fair probability that [the plaintiff] has committed a crime.'" United States v. Smith, 790 F.2d 789, 791 (9th Cir. 1986).  Law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause.  Unites States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989).

a. Beecham

Here, at the time of Beecham's arrest, Defendants argue Officer Twardosz was aware of the following facts:  Officer Twardosz observed Beecham make a lane change without signaling. Defs' SUF ¶¶ 1-2.  Officer Twardosz believed Beecham violated Vehicle Code Section 2800.1(a)(1), which provides that any person who operates a motor vehicle with the intent to evade, willfully flees, or otherwise attempts to elude a pursuing police officer's vehicle is guilty of a misdemeanor if the officer's vehicle exhibited at least one red lamp visible from the front and the person either sees, or reasonably should have seen the lamp.  Defs' Opp. 12:11-16.  Beecham failed to yield to Officer Twardosz's lights and siren for a substantial distance, finally stopped in the middle of a narrow bridge, partially stepped out of the vehicle and acted bizarrely as she yelled and appeared extremely angry.  Defs' SUF ¶¶ 8-14.  Beecham ignored Officer Twardosz's instructions and proceeded one block beyond the location where she was directed to stop.  Id. ¶¶ 19-20.

Given these facts, a jury could reasonably conclude that there was probable cause for Officer Twardosz to believe Beecham was attempting to evade the police in violation of Vehicle Code Section 2800.1(a)(1) and therefore, could be lawfully seized.

The fact that after the incident Officer Twardosz returned to the police department, conducted research on Section 2800.1(a)(1), and amended the citation to a Section 21806(a)(1) violation for failing to yield to police lights, does not negate that probable cause may have existed at the time of Beecham's arrest. Johnson v. Lewis, 120 Cal. App. 4th 443, 453 (2004). The validity of an arrest is measured by whether the facts known to the officer support a reasonable suspicion of criminal activity, not whether the facts are sufficient to convict. Id. That Beecham was ultimately not convicted of violating Section 21806(a)(1) or 2800.1(a)(1) does not negate that there is ample evidence here for a jury to reasonably conclude that probable cause existed at the time of Beecham's arrest. Id.

As the non-moving parties, Defendants' version of the incident must be accepted as true and all justifiable inferences are to be drawn in their favor. Anderson, 477 U.S. at 255; Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Defendants' evidence demonstrates that there are several disputed material facts to be resolved by a jury including: the length of time Plaintiffs were handcuffed in the backseat of the

patrol cars; whether Officer Twardosz activated his lights and siren before Beecham drove onto the I Street Bridge; the distance Beecham's vehicle travelled before yielding to Officer Twardosz's lights and siren; Beecham's behavior on the bridge and during the traffic stop; and whether Officer Twardosz conducted a high risk stop due to bizarre and threatening behavior by Beecham rather than solely because Beecham failed to yield.  All of these disputed facts have a bearing on whether Officer Twardosz's arrest of Beecham constituted an unreasonable seizure under the Fourth Amendment.  Accordingly, several material issues must be decided by a jury before the "totality of the circumstances" surrounding Beecham's alleged false arrest can be determined.  Thus, Beecham's motion for partial summary judgment against Officer Twardosz for false arrest is DENIED.

b. Crankson

Turning to Crankson, the principal question is whether the police action constituted a Terry stop or an arrest.  Plaintiffs allege Crankson was falsely arrested, while Defendants argue Crankson was subject to a valid investigatory stop under Terry v. Ohio, 392 U.S. 1, 20 (1968).  There is no bright-line rule to determine when an investigatory stop becomes an arrest.  United States v. Parr, 843 F.2d 1228, 1231 (9th Cir. 1988).  Rather, in determining whether stops have turned into arrests, courts consider the "totality of the circumstances."  United States v.

Del Vizo, 918 F.2d 821, 824 (9th Cir. 1990) (quoting United States v. Baron, 860 F.2d 911, 914 (9th Cir. 1988).

In looking at the totality of the circumstances, this Court considers both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted, United States v. Robertson, 833 F.2d 777, 780 (9th Cir. 1987) ("Whether an arrest has occurred depends on all the surrounding circumstances, including the extent to which liberty of movement is curtailed and the type of force or authority employed."), and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the actions taken.  See Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).  In short, this Court must decide whether the police action constitutes a Terry stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable given the specific circumstances.  See Del Vizo, 918 F.2d at 824-25.

In determining the severity of the intrusion and the aggressiveness of the police action, the Ninth Circuit has stated, "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical Terry stop."  See Id. at 918 F.2d at 825 (use of handcuffs important factor in determining that an arrest had

occurred).  Similarly, if the police draw their guns it greatly increases the seriousness of the stop.  See Washington, 98 F.3d at 1187 ("Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment.").  Finally, whether the police physically restrict the suspect's liberty is an important factor in analyzing the degree of intrusion effected by the stop.  See Id. at 1189; see also Del Vizo, 918 F.2d at 825 (removing suspect from his car and making him lie down in the street was a factor in whether an arrest has occurred).

Here, Crankson did nothing immediately prior to or during the confrontation with the police to justify Officer Twardsoz's actions.  As noted above, Crankson complied with all police orders and offered no resistance.  Thus, this case resembles Washington v. Lambert, 98 F.3d 1181 (9th Cir. 1996), where the Ninth Circuit held that in light of plaintffs' complete cooperation at the scene an arrest had occurred where the police drew and pointed guns, handcuffed the suspects, and placed them in a police car.  In looking at the totality of the circumstances, this Court finds that Officer Twardosz's actions constituted an arrest.  Not only was the stop intrusive, as it included holding Crankson at gunpoint, handcuffing her, and placing her in the back of a police vehicle, but also the

methods used were unreasonable given the specific circumstances, i.e., Beecham's failure to yield.  This case is not a close one; any reasonable juror would be compelled to find on these facts that the stop was an arrest.  Thus, this Court finds that Crankson was arrested.

Next, the Court considers whether Officer Twardosz had probable cause to arrest Crankson.  Defendants do not argue there was probable cause to arrest Crankson.  Instead, Defendants erroneously rely on their assertion that Crankson was merely subjected to a Terry stop.  Defs' Opp. 14-17.  In viewing the facts in the light most favorable to Defendants, this Court concludes there was not probable cause to arrest Crankson.  Officer Twardosz admits Crankson did nothing threatening and Defendants have not plead any facts which suggest a prudent officer in Officer Twardosz's position would believe that Crankson had committed or was committing a crime.  Accordingly, this Court finds Crankson was arrested without probable cause in violation of her Fourth Amendment rights.  Crankson's motion for partial summary judgment against Officer Twardosz for false arrest is GRANTED.

3. Municipal Liability

Plaintiffs assert the City of West Sacramento is liable under 42 U.S.C. § 1983 for the customs and practices in its police department, which led to the use of excessive force and

false arrest of Plaintiffs in violation of their Fourth

Amendment rights.   Defendants contend the City has no policy or

practice that gives rise to liability.   Municipalities and local

governments can be sued directly for violations of

constitutional rights under § 1983 where government officials

were acting pursuant to an official policy or recognized custom.

Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690

(1978).   To directly sue a municipality under § 1983, a

plaintiff must show that (1) she had a constitutional right of

which she was deprived; (2) the municipality had a policy; (3)

the policy amounted to deliberate indifference to the

plaintiff's constitutional right; and (4) the policy was the

moving force behind the constitutional violation.   Oviatt v.

Pierce, 954 F.2d 1470, 1474 (9th Cir. 1992).

     Here, there are several triable issues of fact as to

whether Beecham's Fourth Amendment rights were violated.   Absent

a violation of constitutional rights, the City cannot be held

liable.   Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994)

(finding that "while the liability of municipalities doesn't

turn on the liability of individual officers, it is contingent

on a violation of constitutional rights").   However, as stated

above, Crankson's Fourth Amendment rights were violated and

therefore, this Court can reach the issue of municipal

liability.

After a plaintiff has proved a constitutional violation, as Plaintiffs have in Crankson's case, the plaintiff must then prove that the violation of her constitutional right resulted from an "official municipal policy." Monell, 436 U.S. at 691. In this case, Plaintiffs have failed to provide evidence of an existing municipal custom or policy that would be the moving force behind the officers' actions.  The West Sacramento Police Department's guidelines state that only force which is reasonable and necessary under the circumstances should be implemented.  Defs' Opp. 29:11-13.  In regards to Crankson, this Court has found that the officers did not implement force that was reasonable or necessary.  Instead, the officers acted outside the guidelines.  WSPD officers are trained that they have the discretion to utilize high risk stops under circumstances where the officers believe the safety risk is elevated above that of an ordinary traffic stop.  Defs' SUF ¶ 24.  In regards to Crankson, Defendants have successfully argued that Plaintiffs have a single incident of unconstitutional behavior where the officers acted unreasonably in concluding Crankson was a safety risk.  Defs' Opp.  29: 15-18.  This Court concludes, therefore, that there remain material questions as to whether official policy was the moving force of the constitutional violations.  Accordingly, Plaintiffs' motion for

partial summary judgment against the City pursuant to their

Monell claims is DENIED.

C. California Civil Code Section 52.1

Plaintiffs' allege violations of California Civil Code

Section 52.1 against Officer Twardosz and the City.  Section

52.1 provides that "any individual whose exercise or enjoyment

of constitutional rights . . . has been interfered with" by

"threats, intimidation or coercion" may bring a civil action on

his or her own behalf.  Cal. Civ. Code § 52.1.  Plaintiffs' §

52.1 claims rest upon their allegations that first, Defendants

violated their Fourth Amendment rights through excessive force

and false arrest and second, that these rights were interfered

with by threats, intimidation, and coercion.  Pls' Mot. 26:3-28;

27:1-17.

a. Beecham

As discussed above, there are several disputed issues of

material fact regarding Beecham's Fourth Amendment claims,

thereby precluding summary judgment on Beecham's § 52.1 claims.

Because a reasonable jury could conclude that Defendants acted

reasonably under the circumstances and did not violate any of

Beecham's rights, it would be premature for this Court to decide

whether any of Beecham's rights, if violated at all, were

interfered with by "threats, intimidation, or coercion."

Accordingly, Beecham's motion for partial summary judgment as to

her Cal. Civ. Code § 52.1 claims for use of excessive force and false arrest against Officer Twardosz and the City is DENIED.

b. Crankson

In regards to Crankson, Officer Twardosz and the City are liable under § 52.1.  Crankson's constitutional rights were clearly interfered with by "threats, intimidation, or coercion." Defendants violated Crankson's Fourth Amendment rights with a use of force that included holding Crankson at gunpoint, handcuffing her, and placing her in the back of a police vehicle.  The entire course of the WSPD conduct, including conducting a full high risk stop on Crankson, constitutes threats, intimidation, and coercion in violation of § 52.1.

Moreover, under state law, the City is vicariously liable for the torts of its employees.  Cal. Gov't Code § 815.2 provides, "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative."  Cal. Govt's Code § 815.2 (a). Here, Officer Twardosz and the other officers pointed guns at Crankson, handcuffed her, and confined her in a police vehicle without probable cause.  Officer Twardosz's acts have given rise to his personal liability under § 52.1 and therefore, the City is vicariously liable for his actions.  Accordingly, Crankson's

motion for partial summary judgment against Officer Twardosz and

the City on her claims for false arrest and excessive force

under Cal. Civil Code § 52.1 is GRANTED.

D. Qualified Immunity

Defendants argue Officer Twardosz is entitled to qualified

immunity. Defs' Opp. 26:8. Qualified immunity is a defense to

lawsuits against governmental officials arising out of the

performance of their duties. Its purpose is to permit such

officials to undertake their responsibilities without fear that

they will be held liable in damages for actions that appear

reasonable at the time, but are later held to violate statutory

or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800,

819 (1982); Pierson v. Ray, 386 U.S. 547, 554 (1967). When a

law enforcement officer asserts qualified immunity, the inquiry

is first whether, "taken in the light most favorable to the

party asserting the injury, [] the facts alleged show the

officer's conduct violated a constitutional right." Saucier v.

Katz, 533 U.S. 194, 201 (2001). If so, the court must determine

whether the right violated was clearly established such that "it

would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." Id. at 202. If the

Court concludes that both of these inquires are answered in the

affirmative, the officer is not entitled to qualified immunity.

Id. at 201.

a. Beecham

Here, assessing the facts in the light most favorable to Beecham, as the injured party, Beecham's Fourth Amendment rights were violated.  Plaintiffs claim Beecham pulled over shortly after Officer Twardosz activated his full lights and siren on the I Street Bridge and that Beecham complied with Officer Twardosz's orders throughout the duration of the stop.  Pls' SUF ¶¶ 7-31.  Nevertheless, Officer Twardosz ordered a high risk stop, surrounded Plaintiffs with four police vehicles, held Plaintiffs at gunpoint, handcuffed Plaintiffs, and placed Plaintiffs in the back of separate police vehicles for approximately 30 minutes while their young children remained alone in the back of their car.  Id. ¶¶ 22-41.  Assuming this is true, Officer Twardosz's use of force was severe considering Beecham's minor traffic violation and temporary failure to yield.  The threat to Officer Twardosz was minimal as was any risk of flight.  Moreover, there were many less abusive means through which Officer Twardosz could have accomplished his objective of citing Beecham for a traffic violation.  Thus, the facts here at issue, viewed in the light most favorable to Plaintiffs, demonstrate that Officer Twardosz's actions were unreasonable and that Beecham's Fourth Amendment rights were violated.

Even if Officer Twardosz's conduct violated Beecham's Fourth Amendment rights, he would be entitled to qualified immunity if the right violated was not "clearly established." Saucier, 533 U.S. at 201-02. The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. In assessing the reasonableness of an officer's conduct where there is no case law directly on point, the inquiry is "whether the state of the law [at the time of the alleged wrong] gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

Here, any reasonable officer in Officer Twardosz's position would have known that the force used was excessive from a review of the well-established law. In light of the Graham factors discussed supra, Officer Twardosz should have known that calling for a high risk stop, holding Beecham at gunpoint, handcuffing Beecham, and placing Beecham in the back of a police vehicle was unnecessary and excessive under the circumstances. See e.g. Palmer v. Sanderson, 9 F.3d 1433, 1434-36 (9th Cir. 1993) (holding that an officer who, during a traffic stop, jerked the plaintiff out of his car, handcuffed him, forcefully shoved him into the back of a patrol car, and refused to loosen his

handcuffs was not entitled to qualified immunity because no reasonable officer would have thought this conduct was constitutional).  Fourth Amendment law was sufficiently established at the time of the incident to give Officer Twardosz fair warning that his actions were unconstitutional.  <u>Robinson v. Solano County</u>, 278 F.3d 1007, 1015 (9th Cir. 2002) (finding that in many situations drawing weapons and using handcuffs or other restraints is unreasonable).

Therefore, in examining the facts in the light most favorable to Beecham, this Court is precluded from granting qualified immunity at this point in the litigation.  Although the Court is aware of the importance of resolving immunity questions at the earliest possible stage in litigation, it cannot grant qualified immunity to Officer Twardosz in this instance where, in viewing the facts in the light most favorable to Beecham, the force used by Officer Twardosz was unreasonable under the circumstances.  Accordingly, because a reasonable officer would have know that the conduct complained of by Beecham constituted excessive force and false arrest, Officer Twardosz is not entitled to qualified immunity as to Beecham's claims at this stage in the litigation.

b. Crankson

Turning to Crankson, this Court concluded that the facts alleged show Officer Twardosz violated Crankson's constitutional

rights.   Therefore, the inquiry is whether it would be clear to a reasonable officer, in Officer Twardosz's position, that his conduct was unlawful in the situation he confronted.  See Saucier, 533 U.S. at 201.  This Court finds persuasive the cases cited by Plaintiffs which held that officers who point their guns at a person in the absence of an objective, immediate, and actual threat violate the Fourth Amendment.  See Washington v. Lambert, 98 F.3d 1181, 1187-1188 (9th Cir. 1996)(finding that "Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment."); see also Robinson v. Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc) (holding that pointing a gun at a person "can be a violation of the Fourth Amendment, especially where the individual poses no particular danger).

Here, as discussed above, Crankson did not pose an immediate, objective threat to Officer Twardosz.  Moreover, the law was clearly established at the time of the incident to place Officer Twardosz on notice that his actions violated the Fourth Amendment.  See Washington, 98 F.3d at 1187-1188; see also Robinson, 278 F.3d at 1015.  Accordingly, because a reasonable officer would have known that the actions taken against Crankson constituted excessive force and false arrest, Officer Twardosz is not entitled to qualified immunity as to Crankson's claims.

III. ORDER

For the reasons set forth above, Plaintiff Beecham's motion for partial summary judgment against Officer Twardosz and the City for use of excessive force and false arrest is DENIED. Beecham's motion for partial summary judgment against Officer Twardosz and the City based on Cal. Civil Code § 52.1 is DENIED. Plaintiff Crankson's motion for partial summary judgment against Officer Twardosz for use of excessive force and false arrest is GRANTED, while Crankson's motion for a finding of municipal liability is DENIED.  Crankson's motion for partial summary judgment against Officer Twardosz and the City based on Cal. Civil Code § 52.1 is GRANTED.  Finally, the Court is precluded from granting qualified immunity as to Beecham's claims and finds Officer Twardosz is not entitled to qualified immunity as to Crankson's claims.

IT IS SO ORDERED.

Dated:  October 22, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE