1
2
3
4
5
6
7
8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KARENE BEECHAM, individually,
     and KARENA CRANKSON,
11   individually,

12             Plaintiffs,                      No. CIV S-07-1115 JAM EFB

13        vs.

14   CITY OF WEST SACRAMENTO,
     a public entity, POLICE OFFICER
15   TIMOTHY TWARDOSZ, POLICE
     OFFICER GEOFFREY ALBERT,                   ORDER
16   POLICE OFFICER STEVE GODDEN,
     POLICE OFFICER ED HENSLEY, and
17   DOES 4 through 10, Jointly and Severally,

18             Defendants.

19   _____/

20        This matter was before the court on December 3, 2008, for hearing on defendants'

21   motion to compel discovery and this court's November 4, 2008 order to show cause.  Attorney

22   Michael Haddad appeared on behalf of plaintiffs.  Laurence L. Angelo, Carrie Frederickson, and

23   J. Scott Smith appeared on behalf of defendants.  After hearing, the court ordered supplemental

24   briefing which has been completed.

25        Defendants' motion, filed October 27, 2008, seeks reimbursement of costs associated

26   with plaintiffs missing their initially-scheduled psychiatric examinations, and to compel

                                                1

plaintiffs' attendance at their rescheduled exams.  It also seeks imposition of sanctions associated with the failure of Mahinda Crankson, husband of plaintiff Karena Crankson, to appear at his initially scheduled and rescheduled depositions.[1]  Dckt. No.  90.

In an order filed November 4, 2008, this court reminded plaintiffs of their obligation to attend their respective psychiatric examinations; instructed defense counsel to obtain alternative examination dates for each plaintiff in the event such dates were needed by the court; and ordered plaintiffs to show cause why they should not be required to pay the costs associated with each missed appointment.  Dckt. No. 104.

For the following reasons, the court orders plaintiffs to pay the reasonable costs associated with each missed appearance.

PLAINTIFFS' INDEPENDENT MEDICAL EXAMINATIONS

A party may be required to submit to an independent medical examination ("IME") if she has put her physical or mental condition in controversy.  Fed. R. Civ. P. 35(a).   In the present case, the parties agreed, and this court so ordered, that each plaintiff attend two IMEs conducted, respectively, by "a psychiatrist and psychologist retained by defendants."  *See* "Stipulation and Protective Order," signed and filed by this court on August 18, 2008, Dckt. No. 36.  That order provided in pertinent part:

> At a mutually agreed time and date, or upon a date, time, and place set by the Court if the parties cannot mutually agree, each Plaintiff will be produced for an examination by a psychiatrist and psychologist retained by defendants.  In the event the Plaintiffs cannot be produced for said examinations before the discovery cut-off date, Plaintiffs agree to submit to said examinations on a mutually agreed time and date thereafter, and if the parties cannot mutually agree, to a date, time and place set by the Court . . ."

*Id.*, at p. 3, ¶ 11.

---

[1]  Pursuant to this court's order filed November 4, 2008, instructing defendants to narrow their discovery motion to those matters that could properly be heard within the then existing discovery deadlines, Dckt. No. 104, defendants dropped that portion of their motion seeking to compel plaintiffs' responses to defendants' contention interrogatories.  Jt. Stmt., filed Nov. 26, 2008, Dckt. No. 132, at pp. 2-3.

1          Plaintiff Karene Beecham failed to appear for her psychiatric IME scheduled for October

2    8, 2008.  Similarly, plaintiff Karena Crankson failed to appear for her psychiatric IME scheduled

3    for October 13, 2008.  The appointments had to be rescheduled, and on October 27, 2008,

4    defendants filed a motion seeking, *inter alia*, to compel the attendance of Beecham and

5    Crankson at their rescheduled IMEs.  By order filed November 4, 2008, this court instructed

6    plaintiffs that they remained subject to the court's August 29, 2008 order requiring their

7    attendance at their respective psychiatric IMEs.  Plaintiffs were cautioned that failure to abide by

8    the court's August 18, 2008 order, or to appear at their respective IME, "may be cause for

9    sanctions, including, but not limited to, the possible exclusion at trial of plaintiffs' emotional

10   distress claims and claims for damages thereon."  *Id*., at p. 4 (citation omitted).  In addition,

11   plaintiffs were ordered to show why they should not be required to pay the costs, *inter alia*,

12   resulting from plaintiffs' failure to appear for their initially scheduled IMEs.[2]

13         At the December 3, 2008 hearing, the parties stated that they had agreed to reschedule

14   plaintiffs' IMEs for December 10 and 15, 2008.  There has been no further communication with

15   the court on this matter, and it thus appears that both plaintiffs appeared and completed their

16   respective psychiatric IMEs on the rescheduled dates.

17         Remaining is defendants' motion for reimbursement of the IME's cancellation fees.  If a

18   party fails to obey a discovery order, including one pursuant to Fed. R. Civ. P. 35 (physical and

19   mental examinations), the court is authorized to "order the disobedient party, the attorney

20

21         [2]   The parties dispute the timeliness of plaintiffs' response to the order to show cause.
22   Plaintiffs were ordered to file their response "five court days prior to the December 3, 2008
     hearing." Dckt. No. 104, at p. 5.  They filed their response on Tuesday, November 25, 2008.
23   Dckt. Nos. 128-131.  Given the Thanksgiving holiday, the court was closed Thursday and
     Friday, November 27 and 28, 2008, thus making the deadline for plaintiffs' response Monday,
24   November 24, 2008.  Plaintiffs assert their response was timely based on the definition of "legal
     holidays"in Fed. R. Civ. P. 6(a)(4)(A), and 77(c)(1), and E. D. Cal. L. R. 77-121, and the court's
25   initial pronouncement of anticipated court holidays not including the Friday after Thanksgiving.
     *See* Dckt. No. 132, at pp. 19-20.  Although plaintiffs' counsel are responsible for remaining
26   informed of any changes in the court's calendar and docket the court is considering and
     addressing the merits of plaintiffs' response.

advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), and (C). Thus, the question presented here is whether the failure of either plaintiff to appear at their IME was "substantially justified.".

Plaintiff Beecham's IME was scheduled October 8, 2008, at 3:00 p.m. She asserts that she had a prenatal appointment scheduled on the same day as, but prior to, the IME appointment. However, the prenatal appointment ran late. At approximately 3:30 to 3:40 p.m., her husband telephoned the office of the doctor who was to perform the IME to advise that Beecham was late, and to ask whether the IME could be conducted in the last hour. Beecham was told that the IME would need to be rescheduled. The missed IME resulted in defendants incurring a cancellation fee.

Plaintiffs' attorneys stated at the hearing that they were first informed of this problem "when plaintiff was already late." *See also*, Sherwin Decl. Dckt No. 148, ¶ 6. Counsel were unable to explain why Beecham's prenatal appointment had been scheduled so close in time to the IME. Nor did counsel assert that Beecham's prenatal appointment was other than routine. In other words, no evidence was presented that Beecham had been unable to anticipate a possible conflict between her prenatal appointment and IME examination, and to plan accordingly, e.g., by rescheduling the former. Nor was a satisfactory explanation provided as to why defense counsel was not previously informed that Beecham had an earlier appointment that same afternoon, nor why a call to the IME doctor was not placed immediately after it became apparent that the appointment time would be missed.

Plaintiff Crankson's IME was scheduled October 13, 2008, at 3:00 p.m. She states that she failed to show for this appointment due to her hospitalization for the period of October 13 through October 16, 2008. Defendants incurred a cancellation for this missed appointment as well. Again, there is no satisfactory explanation for why this information was not timely communicated to the IME doctor's office and to defense counsel. Plaintiffs' counsel state that

1   they first learned of the missed appointment when called by the office of the IME doctor

2   reporting that Crankson had failed to arrive.  Counsel in turn telephoned Crankson on her cell

3   phone and only then discovered that she was in the hospital.  In his deposition taken November

4   26, 2008, Mr. Crankson testified that his wife informed him *two days prior* to her hospitalization

5   that she would be admitted on October 13, 2008, for the purpose of monitoring her "headaches

6   and migraine."  Mr. Crankson testified that his wife's hospitalization was not an emergency;

7   rather, that Crankson had previously informed her husband that she would be undergoing such

8   monitoring, although the date had not yet been determined.

9         The court instructed plaintiff to provide either a discharge summary or a declaration of

10  Crankson's doctor explaining the purpose of plaintiff's hospitalization.  Plaintiff filed under seal

11  Dr. Cruz' discharge summary dated October 16, 2008, which shows that Crankson was admitted

12  for monitoring to evaluate whether her symptoms were associated with "seizures versus

13  complicated migraine."  Dckt. No. 148, Exh. A; *see also*, Dckt. No. 131, Exh. B (plaintiff

14  previously provided a letter from Dr. Cruz certifying that Crankson "was admitted to Mercy

15  General Hospital from Oct. 13-16, 2008").  Neither submission from Dr. Cruz suggests that

16  Crankson's hospital admittance was urgent and unexpected, or that Crankson did not have

17  adequate notice within which to inform her counsel or her IME examiner that she had a

18  scheduling conflict.

19        Thus, plaintiffs have presented no evidence to suggest that missing their respective IMEs

20  was unavoidable or "substantially justified."  Fed. R. Civ. P. 37(b)(2)(C).  Plaintiffs' counsel was

21  timely informed, on September 15, 2008, of the cancellation policies of each examiner.  *See*

22  Fredrickson Decl., Dckt. No. 134, pp. 2-3, and Exh. C.  Dr. James Margolis, scheduled to

23  examine Crankson (original scheduling was with Dr. Robert Allen), required a 72-hour notice of

24  cancellation; while Dr. Laura Nasatir, scheduled to examine Beecham, required a five-day

25  cancellation notice.  Plaintiffs were informed that failure timely to cancel an appointment with

26  either of these physicians would result in a cancellation fee equivalent to four hours, at $450 an

1    hour, for a total of $1800 for Dr. Margolis, and two hours, at $550 an hour, for a total of $1100

2    for Dr. Nasatir.  The court fully credits the representations of plaintiffs' counsel that they had no

3    prior notice that either plaintiff was to miss or be late for their respective appointments and that

4    counsel only learned of these issues after the appointments had been missed.  Nonetheless, it is

5    clear that the plaintiffs have not taken the process seriously in the scheduling of the

6    appointments and in communicating with their counsel.  Their failure to do so has needlessly and

7    without justification caused defendants to incur costs for the missed appointments.

8         An award of monetary sanctions must be "reasonable." Fed. R. Civ. P. 37(b)(2)(C).

9    The time that was set aside for the IMEs of these two plaintiffs is time that other patients could

10   have been seen had plaintiff properly and timely communicated their scheduling conflicts so that

11   the IMEs could have been scheduled at times the plaintiffs were available.  However, both exams

12   were scheduled for 3:00 p.m. and it is unreasonable to assume that either exam would proceed

13   past 5:00 p.m.  Therefore, a cancellation fee reflecting more than a two-hour examination is not

14   reasonable.  Additionally, the court finds that $450 represents the outer range of reasonable

15   hourly rate, considering all necessary factors,[3] and based on the failure of either party to dispute

16   the court's tentative ruling on this matter at the hearing.

17        Accordingly, the court will grant defendants' motion for monetary sanctions in the

18

19        [3] "In determining whether a requested expert fee is 'reasonable' courts generally
20   consider the following factors:  (1) the witness' area of expertise; (2) the education and training
     that is required to provide the expert insight that is sought; (3) the prevailing rates for other
21   comparably respected available experts; (4) the nature, quality and complexity of the discovery
     responses provided; (5) the cost of living in the particular geographic area; and (6) any other
22   factor likely to be of assistance to the court in balancing the interests implicated by Rule 26
     [b](4)(C)]." *Goldwater v. Postmaster Gen'l of the United States*, 136 F.R.D. 337, 340
23   (D.Conn.1991).  In addition, courts look to (1) the fee actually being charged to the party who
     retained the expert; and (2) fees traditionally charged by the expert on related matters.  *Jochims
24   v. Isuzu Motors, Ltd.*, 141 F.R.D. 493, 496 (S.D. Iowa 1992)."  *Mathis v. NYNEX* ,165 F.R.D. 23,
     24 -25 (E.D.N.Y. 1996) ($250 per hour for psychiatrist in 1996), cases cited therein, and cases
25   thereafter citing *Mathis, e.g., Carovski v. Jordan,* 2008 WL 4501907, 4 (W.D.N.Y. 2008)
     (awarding $250 hourly fee, after finding requested $600 hourly fee unreasonable for
26   neuropsychologist).

1  amount of $900 for each missed IME, for a total of $1,800.

2  DEPOSITIONS OF MR. CRANKSON

3          Defendants seek reimbursement for their expenses associated with the failure of Mr.

4  Crankson to attend his initially scheduled deposition, on June 12, 2008, and seek sanctions

5  against plaintiffs' counsel for advising Mr. Crankson not to attend his next scheduled deposition

6  on October 17, 2008.  Mr. Crankson was ultimately deposed on November 26, 2008.

7          As set forth in the parties' papers and counsels' statements at the hearing, Mr. Crankson's

8  deposition was initially scheduled for June 12, 2008, at 3:00 p.m., one hour after Mr. Beecham's

9  deposition.  The latter deposition concluded early, at 2:37 p.m., and plaintiffs' counsel

10  telephoned Mr. Crankson to see if he could arrive earlier.  Mr. Crankson stated that he was

11  having car trouble, would take a cab, and anticipated arriving ten to fifteen minutes after three

12  o'clock.  Mr. Crankson telephoned a few minutes after 3:00 p.m., stated he was having trouble

13  getting a cab, and did not believe he could arrive before 3:30 or 3:40 p.m.  The parties agreed to

14  reschedule Mr. Crankson's deposition.  Defense counsel seeks reimbursement of his expenses,

15  and has filed a declaration stating that the following expenses were incurred:  attorney fees of

16  $148.50, and court reporter costs of $124.50, totaling $273.00.

17          On September 11, 2008, defense counsel rescheduled the deposition of Mr. Crankson, by

18  subpoena, for October 17, 2008.  The notice of deposition and a copy of the subpoena were

19  mailed to plaintiffs' counsel on September 11, 2008.  Mr. Crankson was personally served with

20  the deposition subpoena on October 10, 2008, and paid a witness fee of $40, plus mileage.  On

21  October 11, 2008, a Saturday, plaintiffs' counsel informed defense counsel by fax that they

22  would be out of state on October 17, 2008.  October 13, 2008 was a holiday and therefore

23  defense counsel's office did not see the fax until October 14, 2008, three days before the

24  scheduled deposition, and while defense counsel was unavailable.  Defense counsel had

25  previously, on September 25, 2008, notified plaintiffs and the court of his unavailability due to

26  the of vacation.  *See* Dckt. No. 68 (stating that counsel would be unavailable October 9 through

16, 2008).  On October 15, 2008, plaintiffs' counsel informed defense counsel that they "also represented" plaintiffs' husbands, and would, upon counsel's return on October 23, 2008, "provide dates" when Mr. Crankson would be available to be deposed.  Plaintiffs' counsel did not provide their formal notice of unavailability (October 15 through 23, 2008) until October 13, 2008.  Dckt. No. 75.  Defense counsel nonetheless noticed Mr. Crankson's deposition for October 17, 2008.  Although subpoenaed to appear a that time, Mr. Crankson failed to appear. Defendants incurred the following expenses:  attorney fees of $49.50, and court reporter costs of $207.80, totaling $257.30.[4]

At his deposition on November 26, 2008, Mr. Crankson testified that he had called plaintiffs' counsel upon receipt of the deposition subpoena (October 10, 2008), and was told by counsel that the date had been changed and he need not attend.  *See* Dckt. No. 159, Exh. A, at pp. 9, 10-11.  At the hearing, plaintiffs' counsel stated that this matter arose during a busy time and, in any case, defendants had unilaterally chosen the date for Mr. Crankson's rescheduled deposition; counsel conceded only that they should have notified defense counsel ten, rather than six days (based upon the Saturday fax) prior to their departure out of state.

Plaintiffs' counsel has not shown an adequate basis for instructing Mr. Crankson to disregard the subpoena.  *See* Fed. R. Civ. P. 45(e) ("The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena").  Defendants' contention is meritorious.  "There is no constitutional right to disobey a lawful subpoena."  *In re Grand Jury Subpoena Dated June 5, 1985*, 825 F.2d 231, 237 (9th Cir. 1987), citing *United States v. United Mine Workers of America* , 330 U.S. 258, 303-04 (1946).  "The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter.  One who defies the public

---

[4] Defendants also incurred, but do not seek, $123.95 for the costs of the process server, the $40 witness fee, and the mileage payment; defendants do not seek reimbursement "since plaintiffs' attorneys have agreed to produce Mr. Crankson for his deposition on November 26, 2008."  Jt. Stmt., Dckt. No. 132, at p. 13, n. 2.

authority and willfully refuses his obedience, does so at his peril." *United Mines Workers*, 330

U.S. at 303.  "[E]vil intent is not necessary . . .a deliberate and conscious intent to disobey the

subpoena is all that is needed." *Wheeldin v. U.S.*, 283 F.2d 535, 535 (9th Cir. 1960).  "[Counsel]

knew that in advising his client to disobey the subpoena he did so at his peril, and he accepted

the peril.  The subpoena had been issued by the clerk of the court; the court was in session . . .

The regular procedure to [challenge] the subpoena was a motion to quash." *LeBer v. U S ex rel*

*Fleming*, 170 F. 881, 890 (9th Cir. 1909); *accord, U.S. v. Pratt*, 3 Alaska 400, 1907 WL 372 (D.

Alaska 1907) ("An attorney . . . is guilty of contempt if he goes beyond the right to advise in

matters of law, and, actuated by a spirit of resistance, counsels or conspires with his client or

others to disobey an order of court and obstruct its enforcement").  Accordingly, even though

Mr. Crankson has since been successfully deposed by defendants, the defendants will be

reimbursed their costs incurred from the improperly cancelled deposition in the total amount of

$530.30.   This amount represents the limited expenses for which defense counsel seeks

reimbursement for both missed depositions.  All but $237.00[5] of this sanction is personal to

plaintiffs' counsel, and shall not be charged, in any manner or by any means, to plaintiffs.

     Although the costs awarded herein are modest, the missed depositions and IMEs have

consumed an inordinate amount of time and demonstrate, at best, a pattern of neglectfulness on

the part of plaintiffs.  Plaintiff are admonished that they must comply the Federal Rules of Civil

Procedure and orders of this court and the failure to do so may result in sanctions, including the

sanction of dismissal.  See Fed. R. Civ. P. 16(f) and Local Rule 11-110.

<u>CONCLUSION</u>

     For the foregoing reasons, IT IS HEREBY ORDERED that:

     1.  Defendants' motion for discovery sanctions, Dckt. No. 90, is granted.

////

---

[5] The $237 in costs attributable to the cancellation of the June 12, 2008, deposition due Mr. Crankson being late shall not be personal to counsel.

2.  Defendants are awarded reasonable reimbursement for their costs associated with plaintiffs' respective failure to appear at their originally scheduled independent psychiatric examinations, in the amount of $900 for each missed examination, for a total of $1,800.

3.  Defendants are awarded reimbursement for their reasonable expenses associated with the failure of Mr. Crankson to appear at his initially scheduled and rescheduled depositions, particularly as a result of abiding by the advice of plaintiffs' counsel to ignore his deposition subpoena, in the total amount of $530.30.

4.  These costs shall be paid within thirty (30) days of the filing of this order.

5.  This court's order to show cause, Dckt. No. 104, is discharged.

IT IS ORDERED.

DATED:  February 4, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE